UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| J & J SPORTS PRODUCTIONS, INC., | No. 2:14-cv-2720-TLN-EFB |
| Plaintiff, | |
| v. | FINDINGS AND RECOMMENDATIONS |
| PHILIP ISIDRO, individually and d/b/a VAPOR PARLOR; and VAPOR PARLOR ROCKLIN, LLC, an unknown business entity d/b/a/ VAPOR PARLOR, | |
| Defendants. | |

This matter was before the court on July 1, 2015, for hearing on plaintiff's motion for entry of default judgment against defendants Philip Isidro, individually and dba Vapor Parlor, and Vapor Parlor Rocklin, LLC.[1] ECF No. 9. Attorney Gary Decker appeared on behalf of plaintiff; no appearance was made on behalf of defendants. For the reasons stated below, and as stated on the record at the hearing, the court recommends that plaintiff's application for entry of default judgment be granted in part.

/////

/////

---

[1] This case was referred to the undersigned pursuant to Eastern District of California Local Rule 302(c)(19) and 28 U.S.C. § 636(b)(1).

1

## I.     Background

Plaintiff, a California corporation, is a closed-circuit distributor of pay-per-view prizefight events. Compl. ¶ 6, ECF No. 1; Gagliardi Aff. ¶ 4, ECF No. 9-4. Pursuant to a contract, plaintiff acquired exclusive nationwide commercial exhibition licensing rights to a television program entitled "'The Clash in Cotai': Manny Pacquiao v. Brandon Rios, WBO Welterweight Championship Fight Program," with a broadcast date of Saturday, November 23, 2013 (the "Program").[2] Compl. ¶ 16; Gagliardi Aff. ¶ 3. Plaintiff subsequently entered into sublicensing agreements with various commercial entities throughout North America, through which it granted limited rights to publicly exhibit the Program within their respective commercial establishments (e.g., hotels, racetracks, casinos, bars, taverns, restaurants, social clubs, etc.). Compl. ¶ 17. Gagliardi Aff. ¶ 5. Plaintiff made transmission of the Program available to commercial establishments that paid plaintiff a commercial sublicense fee to broadcast the Program. Gagliardi Aff. ¶ 8. For example, to exhibit the Program in a commercial establishment that had a fire code occupancy of 55 persons, the commercial sublicense fee would have been $2,200. Gagliardi Aff. ¶ 8 & Ex. 2.

Defendant Philip Isidro is a managing member of defendant Vapor Parlor Rocklin, LLC, which owns and operates the commercial establishment Vapor Parlor, located at 4800 Granite Drive, Suite B3, Rocklin, California. Compl. ¶ 7. Defendants did not obtain a license to exhibit the Program from plaintiff. Compl. ¶ 19; Gagliardi Aff. ¶ 9. On November 23, 2013, plaintiff's investigator, Sherri Hokada, entered the Vapor Parlor and observed the unauthorized broadcast of a portion of the Program on two televisions. Hokada Aff. at 2. Ms. Hokada took three head counts between 7:51 p.m and 9:09 p.m., which revealed the total number of patrons to be 56, 62, and 63. *Id.*

On November 20, 2014, plaintiff filed this action alleging that defendants unlawfully intercepted and intentionally broadcasted the Program at Vapor Parlor for the purpose of direct or indirect commercial advantage or private financial gain. *See generally* Compl. Plaintiff alleges

---

[2] The Program included "all under-card bouts and fight commentary encompassed in the television broadcast of the event . . . ." Compl. ¶ 17.

four claims for relief, which are labeled as "Counts" in the complaint.  Plaintiff's first claim for relief alleges that defendants engaged in the unauthorized publication or use of communications in violation of the Federal Communications Act of 1934, 47 U.S.C. §§ 605 *et seq*.  Compl. ¶¶ 15-24.  Its second claim alleges that defendants engaged in the unauthorized interception, reception, publication, divulgence, display, and/or exhibition of the Program in violation of 47 U.S.C. §§ 553 *et seq*.  *Id*. ¶¶ 25-29.  Plaintiff's third claim alleges a common law claim of conversion, *id*. ¶¶ 30-33, and its fourth claim alleges a violation of California Business and Professions Code §§ 17200 *et seq*., *id*. ¶¶ 34-43.

According to the summons returned on February 27, 2014, plaintiff, through a process server, attempted personal service on defendants[3] on February 21, 22, and 23, 2015.  ECF Nos. 4, 5.  The proofs of service state that process was ultimately left with "LOTIZ PLIZGA – OCCUPANT/PERSON IN CHARGE" on February 23, 2015.  *Id*.  Plaintiff subsequently mailed a copy of the summons, complaint, and related documents to defendants.  *Id*.

On April 14, 2015, plaintiff requested the clerk to enter defendants' default, ECF No. 6, which was entered the following day.  ECF No. 7.  On May 28, 2015, plaintiff filed the instant motion for default judgment, which it noticed for hearing on July 1, 2015.  ECF No. 9.  The application seeks judgment on plaintiff's claims for violation of 47 U.S.C. § 605 and for common law conversion.[4]

---

[3] According to the California Secretary of State's website, Philip Isidro is the agent for service of process for Vapor Parlor Rocklin, LLC.

[4] Plaintiff's application does not request judgment on its claims under 47 U.S.C. § 553 or California Business and Professions Code §§ 17200 *et seq*.  Plaintiff argues that entry of judgment on its section 605 and conversion claims is appropriate pursuant to Rule 54(b) because "entry of judgment will complete this matter such that no appellate court will have to decide the same issues more than once."  ECF No. 13 at 3; *see* Fed. R. Civ. P. 54(b) (permitting the court to entry judgment "as to one or more, but fewer than all, claims . . . only if the court expressly determines that there is no just reason for delay.").  Thus, plaintiff essentially requests that the court leave unresolved the section 533 and unfair competition claims even though plaintiff has no intention of litigating these claims.  This hardly satisfies the requirements of Rule 54(b) and is inappropriate under such circumstances.

However, plaintiff's alternative request that the court dismiss the section 533 and unfair competition claim should be granted.  ECF No. 13 at 3-5.  Accordingly, it is recommended that plaintiff's claims brought under 47 U.S.C. § 553 and California Business and Professions Code

II.     Legal Standard

Pursuant to Federal Rule of Civil Procedure 55, default may be entered against a party against whom a judgment for affirmative relief is sought who fails to plead or otherwise defend against the action. *See* Fed. R. Civ. P. 55(a). However, "[a] defendant's default does not automatically entitle the plaintiff to a court-ordered judgment." *PepsiCo, Inc. v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172, 1174 (C.D. Cal. 2002) (citing *Draper v. Coombs*, 792 F.2d 915, 924-25 (9th Cir. 1986)). Instead, the decision to grant or deny an application for default judgment lies within the district court's sound discretion. *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980). In making this determination, the court considers the following factors:

> (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action, (5) the possibility of a dispute concerning the material facts, (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

*Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986). "In applying this discretionary standard, default judgments are more often granted than denied." *Philip Morris USA, Inc. v. Castworld Products, Inc.*, 219 F.R.D. 494, 498 (C.D. Cal. 2003) (quoting *PepsiCo, Inc. v. Triunfo-Mex, Inc.*, 189 F.R.D. 431, 432 (C.D. Cal. 1999)).

As a general rule, once default is entered, the factual allegations of the complaint are taken as true, except for those allegations relating to damages. *TeleVideo Systems, Inc. v. Heidenthal*, 826 F.2d 915, 917-18 (9th Cir. 1987) (citations omitted). However, although well-pleaded allegations in the complaint are admitted by defendant's failure to respond, "necessary facts not contained in the pleadings, and claims which are legally insufficient, are not established by default." *Cripps v. Life Ins. Co. of N. Am.*, 980 F.2d 1261, 1267 (9th Cir. 1992). A party's default conclusively establishes that party's liability, although it does not establish the amount of damages. *Geddes v. United Fin. Group*, 559 F.2d 557, 560 (9th Cir. 1977) (stating that although a default established liability, it did not establish the extent of the damages).

---

§§ 17200 *et seq* be dismissed without prejudice.

4

III. Discussion

    A.    Appropriateness of the Entry of Default Judgment Under the *Eitel* Factors

        1.    Factor 1: Possibility of Prejudice to Plaintiff

The first *Eitel* factor considers whether the plaintiff would suffer prejudice if default judgment is not entered, and such potential prejudice to the plaintiff militates in favor of granting a default judgment. *See PepsiCo, Inc.*, 238 F. Supp. 2d at 1177. Here, plaintiff would potentially face prejudice if the court did not enter a default judgment. Absent entry of a default judgment, plaintiff would be without another recourse for recovery. Accordingly, the first *Eitel* factor favors the entry of a default judgment.

        2.    Factors Two and Three: The Merits of Plaintiff's Substantive Claims and the Sufficiency of the Complaint

The court considers the merits of plaintiff's substantive claims and the sufficiency of the complaint together below because of the relatedness of the two inquiries. The court must consider whether the allegations in the complaint are sufficient to state a claim that supports the relief sought. *See Danning*, 572 F.2d at 1388; *PepsiCo, Inc.*, 238 F. Supp. 2d at 1175.

The Federal Communications Act prohibits, among other things, "the unauthorized receipt and use of radio communications for one's own benefit or for the benefit of another not entitled thereto." *DirectTV, Inc. v. Webb*, 545 F.3d 837, 844 (9th Cir. 2008) (internal quotations omitted). In relevant part, 47 U.S.C. § 605(a) states:

> No person not being authorized by the sender shall intercept any radio communication and divulge or publish the existence, contents, substance, purport, effect, or meaning of such intercepted communication to any person. No person not being entitled thereto shall receive or assist in receiving any interstate or foreign communication by radio and use such communication (or any information therein contained) for his own benefit or for the benefit of another not entitled thereto. No person having received any intercepted radio communication or having become acquainted with the contents, substance, purport, effect, or meaning of such communication (or any part thereof) knowing that such communication was intercepted, shall divulge or publish the existence, contents, substance, purport, effect, or meaning of such communication (or any part thereof) or use such communication (or any information therein contained) for his own benefit or for the benefit of another not entitled thereto.

1   The U.S. Court of Appeals for the Ninth Circuit has determined that satellite television signals are
2   covered communications under 47 U.S.C. § 605(a).  *DirectTV, Inc.*, 545 F.3d at 844.
3         Although the complaint does not alleged whether the transmission that defendants
4   intercepted was intercepted through a cable system or a satellite television signal, largely due to
5   defendants' failure to appear or defend in the action, plaintiff seeks a default judgment only on its
6   claim brought pursuant to 47 U.S.C. § 605.[5]  While courts have been divided on when § 605
7   applies versus § 553 in cases involving both satellite signals and cable signals, this court need not
8   resolve the split of authority because, based on defendants' default, they have admitted that they
9   pirated the Program in violation of § 605, and plaintiff does not seek damages under § 553.  *See*
10  *J & J Sports Prods., Inc. v. Juarez*, 2011 WL 221634, at *3 (E.D. Cal. Jan. 21, 2011).  Under the
11  circumstances of this case, where plaintiff was deprived of the opportunity to conduct discovery
12  regarding the transmission at issue because of defendants' failure to appear or defend in this
13  action, plaintiff should not suffer the resulting prejudice.  In any event, the split of authority has
14  little practical impact in this case because of the recommendation for the entry of a judgment in
15  the total amount of $10,000, which is the maximum, non-enhanced statutory damages available
16  under both 47 U.S.C. § 553(c)(3)(A)(ii) and 47 U.S.C. § 605(e)(3)(C)(i)(II).  Thus, insofar as the
17  merits of plaintiff's statutory claims and the sufficiency of its pleadings under the *Eitel* factors are
18  concerned, the complaint and record before the court favor entry of a default judgment.[6]
19  /////
20  /////
21  /////

---

[5] Transmissions intercepted from a cable system are expressly covered by 47 U.S.C. § 553(a), which provides that "[n]o person shall intercept or receive or assist in intercepting or receiving any communication service offered over a cable system, unless specifically authorized to do so by a cable operator or as may otherwise be specifically authorized by law."  47 U.S.C. § 553(a)(1).

[6] The court does not address the merits of, or sufficiency of the allegations in support of, plaintiff's state law claim for conversion.  As discussed more fully below, the court need not reach plaintiff's conversion claim because the recommended statutory damages, if awarded, will sufficiently compensate plaintiff such that an award for conversion damages would be duplicative.

### 3. Factor Four: The Sum of Money at Stake in the Action

Under the fourth factor cited in *Eitel*, "the court must consider the amount of money at stake in relation to the seriousness of Defendant's conduct." *PepsiCo, Inc.*, 238 F. Supp. 2d at 1177; *see also Philip Morris USA, Inc. v. Castworld Prods., Inc.*, 219 F.R.D. 494, 500 (C.D. Cal. 2003). Here, plaintiff seeks a significant amount of damages, i.e., $112,200. However, plaintiff's request for statutory damages and damages for conversion are tailored to defendants' specific wrongful conduct. Plaintiff seeks statutory damages under the federal statutes implicated by its claims and, although plaintiff requests $110,000 in statutory damages, the statutes involved contemplate such an award under certain circumstances. Under these circumstances, the court concludes that this factor favors the entry of a default judgment.

### 4. Factor Five: The Possibility of a Dispute Concerning Material Facts

The facts of this case are relatively straightforward, and plaintiff has provided the court with well-pleaded allegations supporting its statutory claims and affidavits in support of its allegations. Here, the court may assume the truth of well-pleaded facts in the complaint (except as to damages) following the clerk's entry of default and, thus, there is no likelihood that any genuine issue of material fact exists. *See, e.g., Elektra Entm't Group Inc. v. Crawford*, 226 F.R.D. 388, 393 (C.D. Cal. 2005) ("Because all allegations in a well-pleaded complaint are taken as true after the court clerk enters default judgment, there is no likelihood that any genuine issue of material fact exists."); *accord Philip Morris USA, Inc.*, 219 F.R.D. at 500; *PepsiCo, Inc.*, 238 F. Supp. 2d at 1177.

### 5. Factor Six: Whether the Default Was Due to Excusable Neglect

Upon review of the record before the court, the court finds that the default was not the result of excusable neglect. *See PepsiCo, Inc.*, 238 F. Supp. 2d at 1177. Plaintiff made three attempts to personally serve defendants with the summons and complaint and ultimately effectuated substituted service of those documents on defendants. Moreover, plaintiff served defendants by mail with its application for default judgment and supporting papers. *See* ECF No. 9 at 4. Despite ample notice of this lawsuit and plaintiff's intention to seek a default judgment, defendants have not appeared in this action to date. Thus, the record suggests that defendants

have chosen not to defend against plaintiff's claims, and not that the default resulted from any excusable neglect.  Accordingly, this *Eitel* factor favors the entry of a default judgment.

      6.      <u>Factor Seven: The Strong Policy Favoring Decisions on the Merits</u>

"Cases should be decided upon their merits whenever reasonably possible." *Eitel*, 782 F.2d at 1472.  However, district courts have concluded with regularity that this policy, standing alone, is not dispositive, especially where a defendant fails to appear or defend itself in an action. *PepsiCo, Inc.*, 238 F. Supp. 2d at 1177; *see also Craigslist, Inc. v. Naturemarket, Inc.*, 694 F. Supp. 2d 1039, 1061 (N.D. Cal. 2010); *ACS Recovery Servs., Inc. v. Kaplan*, 2010 WL 144816, at *7 (N.D. Cal. Jan. 11, 2010); *Hartung v. J.D. Byrider, Inc.*, 2009 WL 1876690, at *5 (E.D. Cal. June 26, 2009).  Accordingly, although the court is cognizant of the policy in favor of decisions on the merits—and consistent with existing policy would prefer that this case be resolved on the merits—that policy does not, by itself, preclude the entry of a default judgment.

Upon consideration of the *Eitel* factors, the court concludes that plaintiff is entitled to a judgment by default against defendant and recommends the same.  What remains is the determination of the amount of damages to which plaintiff is entitled.

    B.    <u>Terms of the Judgment to Be Entered</u>

After determining that a party is entitled to a default judgment, the court must determine the terms of the judgment to be entered.  Considering plaintiff's briefing and the record in this case, including the affidavits and declarations submitted by plaintiff, the court concludes that plaintiff is entitled to an award of statutory damages in the amount of $10,000 as a result of defendants' unlawful interception and broadcast of the Program.

Pursuant to § 605, a court may award statutory damages of "not less than $1,000 or more than $10,000" for a violation of the Federal Communications Act, and may also award enhanced damages of up to $100,000 if the "violation was committed willfully and for purposes of direct or indirect commercial advantage or private financial gain."  47 U.S.C. §§ 605(e)(3)(C)(i)(II), (e)(3)(C)(ii).

Here, plaintiff seeks a judgment in the amount of $112,200.  Plaintiff's application for default judgment indicates that this sum consists of $110,000 for a violation of 47 U.S.C.

§ 605(e)(3)(B)(iii) and (e)(3)(C)(ii), and $2,200 as compensatory damages arising from defendants' alleged act of conversion. ECF No. 9-2 at 2.

Plaintiff's investigator's affidavit provides that the Vapor Parlor's fire code capacity was approximately 55, and that there were between 56 and 63 patrons inside the establishment on the night in question. ECF No. 9-1 at 11.[7] The affidavit further states that the establishment was unlawfully broadcasting the Program on two televisions in mounted or elevated locations. *Id*. Plaintiff's investigator was not charged to enter the establishment, there is no evidence that defendants prepared any special advertising for the broadcast of the Program, that the Vapor Parlor had increased business as a result of the broadcast, or that defendants are repeat offender with respect to intercepting transmissions of the type at issue here. Balancing these facts with the widespread problem of piracy and the need for an award sufficient to deter future piracy, the court recommends an award of statutory damages in the amount of $10,000. The record before the court does not support a finding that enhanced damages are warranted.

Plaintiff also seeks actual damages for defendants' alleged tortious act of conversion in the amount of $2,200, which consists of the fee that defendants would have had to pay to plaintiff in order to lawfully broadcast the Program through a contractual sublicense. Such an award is not supported by the record here. The statutory damages provisions at issue serve not only a deterrent function, *see J & J Sports Prods. v. Orellana*, 2010 WL 1576447, at *3 (N.D. Cal. Apr. 19, 2010), but also a compensatory function, which is evidenced by provisions that permit the award of statutory damages or actual damages in a civil action. *See* 47 U.S.C. § 605(e)(3)(C)(I); 47 U.S.C. § 553(c)(3)(A)(i). Based on the current record, the recommended award of statutory damages in the amount of $10,000 sufficiently compensates plaintiff, and this case does not present a set of circumstances where an additional award might be warranted. Accordingly, an additional award of damages on the conversion claim is not recommended.

/////

/////

---

[7] Again, these facts are based on the arguments presented in plaintiff's points and authorities. They may have to be adjusted if the Ms. Hokada's declaration differs.

IV.     Conclusion

In view of the foregoing findings, it is hereby RECOMMENDED that:

1. Plaintiff's application for default judgment, ECF No. 9, be granted in part and denied in part;

2. Judgment be entered against defendants on plaintiff's claim brought pursuant to 47 U.S.C. § 605(a);

3. Statutory damages be awarded to plaintiff in an amount of $10,000.00;

4. Plaintiff's request for enhanced damages be denied;

5. Plaintiff's claims under 47 U.S.C. § 553 and California's Business and Professions Code §§ 17200 *et seq.* be dismissed without prejudice; and

6. The Clerk be directed to close this case.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Failure to file objections within the specified time may waive the right to appeal the District Court's order.  *Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

DATED:  November 13, 2015.

EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE